# SUPERIOR COURT OF BALTIMORE CITY.

Filed December 9, 1907.

TRUSTEES OF THE SEVENTH BAPTIST CHURCH

VS.

DAVID M. ANDREW, GEORGE H. THOMAS AND THE AMERICAN BONDING COMPANY OF BALTIMORE CITY.

*Thomas G. Hayes* and *Charles T. Bagby* for plaintiffs.

*Bond, Robinson & Duffy* for defendants.

SHARP, J.—

This is an action on a bond, in which the defendants, Andrew and Thomas, are principals, and the American Bonding Company surety.

The narr. alleges that Andrew and Thomas entered into a contract under seal with the plaintiff, dated December 16th, 1904, in which they agreed to "furnish all the labor, materials and other things requisite, and do all things contemplated by said contract as expressed in its terms, covenants, conditions and stipulations and plans and specifications in the erection of a church, to be located at the northwest corner of North avenue and St. Paul street, in the City of Baltimore."

The work was to be completely finished by October 1st, 1905. On the failure to finish by that time, the contractors agreed to pay fifty dollars a day liquidated damages.

It was further stipulated in the contract that "before this contract shall have become in force, the contractors shall give the owner a bond, approved by said owner, for the faithful performance of this contract on the part of the said contractors in the sum of $26,275."

Pursuant to the latter stipulation, the instrument on which this suit is brought was executed on December 21st, 1904.

The condition of the bond is, "That the principals shall well and faithfully comply with all the terms, covenants and conditions of said contract, on their part to be performed, according to its terms, then this obligation to be void," etc.

Three breaches are assigned:

1st. That the defendants' Andrew and Thomas, the contractors, "have not erected the said church according to the plans, specifications and conditions, and the terms of said contract, in a good, skillful and workmanlike manner."

2nd. That the defendants, Andrew and Thomas, did not wholly finish said work, according to the drawings and specifications, on or before the 1st day of October, 1905, and by reason of their failure to do so, there has become due and payable to the plaintiff the sum of $50 for every day thereafter, so long as the work shall remain unfinished as liquidated damages.

3rd. Under said contract, the defendants, Andrew and Thomas, agreed to plaster said church in a careful, skillful and workmanlike manner, but have wholly failed and refused to do so in this, that the defendants did, in an unskillful and unworkmanlike manner, both as to workmanship, character of materials used, the proportion of mixing said materials, plaster said church, and a short while after said plastering was finished, the Building Inspector of Baltimore City (as was his public duty) inspected said plastering and found the same, for the reasons aforesaid, unsafe, some of which has fallen, and other parts are liable at any moment to fall, and by a notice, ordered and directed the plaintiff to remove said plaster. That the plaintiff at once notified both of the defendants of the action and notice of the Building Inspector, and demanded of them that said defective plastering be removed and the same be replaced by proper and good plaster. The said defendants refused to comply with said demand. By reason of said refusal, the plaintiff was compelled to remove said defective plaster and replace the same with good and perfect plaster which the plaintiff did after said refusal.

Special damages are claimed.

A bill of particulars was filed by agreement.

The plaintiff's claim is now limited to the items contained in the bill of particulars, which refers entirely to the plastering and liquidated damages.

Poe's Pleadings, S, 136, S. 736.

This claim is substantially
for liquidated damages,
473 days at $50 a day....$ 23,650 00

Cost of removing and replacing plaster.......... 2,625 00

Total ...................$ 26,275 00

The bond and contract were not filed with the narr., nor does that document contain any reference to them sufficient to make them a part of the narr. for purposes of construction.

But they were filed under the demand for oyer. The narr., bond, contract with the plans and specifications, and the bill of particulars must, therefore, be construed together.

Poe's Pleading, S. 748, S. 136.

On September 17, 1907, a demurrer was filed to the narr.

The case now comes up on this demurrer.

It is contended in support of the demurrer:

1. That the narr. ought to, but does not, allege that the architect had refused to approve the work.

It was argued that the contract provides that the work should be done under the supervision and subject to the control of the architect and contains other stipulations of a similar character, the necessary construction of which is that the architect's disapproval is a condition precedent to any claim by the plaintiff against the defendant for a failure to comply with the contract.

These stipulations need not be considered in detail.

Article 13 of the contract is the controlling stipulation at present.

It appears from the bill of particulars that the plaintiff's claim relates entirely to defective work and improper material in the plastering.

Article 13 of the contract is as follows:

"It is further mutually agreed between the parties that no certificate" (of the architect), "or payment made except the final certificate or payment shall be conclusive evidence of the performance of the contract, either wholly or in part, and that no *payment* shall be construed to be an acceptance of defective work or improper materials."

The defendants contend that construing this clause with the whole contract the final certificate of the architect is conclusive on all points, and that no action lies by either side until he has acted and approved or disapproved the work.

That the omission of the word "certificate" in the last clause of Article 13, indicates that the final certificate should be conclusive on all points, though the final payment should not be conclusive as to defective work or improper materials.

I do not think this construction of the contract the true one. The architect's certificates and the various payments are closely associated throughout the entire contract. The stipulations for the various payments are all dependent on the stipulations for the architect's approval. This is true of the final certificate and payment as well as the others.

The last clause of Article 13 is a little obscure, but I do not think the parties intended to separate the certificate and payment in the final clause and give them an entirely different operation from that given them throughout the contract.

The omission of the word "certificate" in the last clause is not significant.

It would be an impracticable and unreasonable construction of the contract to hold that the final certificate, whose only purpose is to protect the owner and act as a condition precedent to the final payment, should be conclusive, while the payment which accrues immediately upon the execution of the certificate should not be so.

It, therefore, appears that the parties have agreed that none of the architect's certificates and no payments shall be construed as an acceptance of defective work or improper materials. A fortioro an allegation that the architect has refused to approve is not necessary.

It is proper to add, to prevent any misunderstanding at the trial of the case, that the only aspect of the architect's certificates and the payments which was argued or which has been considered is the final certificate and payment. No opinion is expressed about the construction of the contract in other respects.

2. It is next contended that the narr. should allege in connection with the claim for liquidated damages, that the time for the completion of the work had not been extended by the architect. The building was to be finished by October 1, 1905 Prima facie any delay was a breach of the contract. This claim, if warranted by the facts, is a matter of defense.

3. It is also contended in support of the demurrer, that the allegations in the narr. concerning the action of the Building Inspector are irrelevant.

This contention is well founded. The parties agreed that the building shall be erected according to certain plans and specifications, and not according to the plans or subject to the approval of the Building Inspector.

It is true that it is stipulated in the specifications that "all work and materials must conform to the building laws and ordinances, anything hereinafter to the contrary notwithstanding."

But this stipulation does not warrant the allegation in the narr. now under consideration.

If there is any difference between the plans and specifications and the requirements of the building laws and ordinances, and the plaintiff is advised that the latter controls and binds the defendants, notwithstanding the plans and specifications, and thinks the building has not been erected according to the laws and ordinances, he should explain what laws and ordinances have been violated, and the default in this connection. Such an allegation will be altogether different from that contained in the narr.

Finally it is contended that the allegation that "the contractors did not erect the building in a careful and workmanlike manner" is irrelevant.

This contention is also well founded.

I find no such stipulation in the contract or specifications. Indeed, in view of the extremely minute and elaborate provisions concerning the materials and workmanship, in the specifications, particularly in the subcontract, referring to the plastering, little discretion appears to be left to the contractors. While it is true that as far as the specifications leave anything to the skill and discretion of the contractor his work must be done with reasonable skill, yet the allegation in the narr. is entirely too broad and seeks to impose on him a liability which was not contemplated by the parties when they made the contract. The parties agreed that the building should be erected according to certain plans and specifications. The inquiry now must be not whether the work was done generally in a careful and skillful manner, but was it done according to the plans and specifications.

It appears from what has been said:

1. That the first breach assigned is bad and must be stricken out.

2. That the second breach assigned is good as a matter of pleading.

3. That the third breach assigned is bad in its present form.

But the plaintiff may if it wishes to do so, amend, by setting out a breach based on defective work and improper materials in connection with the plastering and omitting all the allegations referring to the Building Inspector, and the obligation to do the

plastering in a careful, skillful and workmanlike manner.

The order' will be—

—*Demurrer sustained, with leave to amend in ten days.*